UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

A. JOSEPH RAETANO,
      Plaintiff,

v.                                 Case No.: 8:08-cv-02104-T-17-TGW

KALLY K'S, INC.,
      Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION TO SUSPEND LOCAL AND GENERAL RULES PENDING ADA INSPECTION AND REMEDIATION PLAN

**THIS CAUSE is** before the Court on the following motion and responses:

1. Defendant's Motion to Suspend Local and General Rules Pending ADA Inspection and Remediation Plan. (Dkt. 8).

2. Plaintiff's Response to Defendant's Motion to Suspend Local and General Rules Pending ADA Inspection and Remediation Plan. (Dkt. 10).

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff originally filed his Complaint on October 22, 2008 (Dkt. 1). Defendant filed an answer on November 5, 2008. (Dkt. 7). Counsel for the parties met on November 24, 2008, by telephone. (Dkt. 9). The results of this telephone conference are memorialized in the December 8, 2008 Case Management Report, which attorneys Todd W. Shulby and Robert G. Walker, Jr. signed and submitted in compliance with the Federal Rules of Civil Procedure and the Middle District Court's Local Rules. (Dkt. 9). On December 8, 2008, Defendant filed a Motion to Suspend Local and General Rules Pending an ADA Inspection and Remediation Plan. (Dkt. 8). On that same date, Plaintiff filed his response to Defendant's motion. (Dkt 10).

## FACTS

Plaintiff alleges the following facts in support of his Complaint (Dkt. 1), which the Court is obliged to accept as true. Hinson v. King & Spauding, 467 U.S. 69, 72 (1984):

1. Plaintiff is a resident of the State of Florida and is disabled as defined by the ADA.

2. Plaintiff is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, grabbing, grasping and pinching. Plaintiff uses a wheelchair for mobility purposes.

3. On his own behalf and on behalf of other persons with disabilities, Plaintiff acts as a "tester" for the purpose of discovering, encountering, and engaging discrimination against the disabled in public accommodations.

4. The Defendant is the owner, lessees, lessors and/or operator of real property known as Kally K's, which is located at 1600 Main Street, Dunedin, Florida.[1]

5. Defendant, Kally K's is a public accommodation and service establishment.

6. Defendant, Kally K's is not in compliance with the ADA and ADAAG.

7. Plaintiff attempted to gain access to Kally K's, but Defendant's ADA and ADAAG violations denied him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations offered.

8. Plaintiff's future access and full and equal enjoyment will remain restricted or limited unless and until Defendant is compelled to remove the physical barriers to access and ADA violations that exist.

## STATEMENT OF THE CASE

This is an action seeking injunctive relief under the Americans with Disabilities Act, 42 U.S.C. §§ 12181- 12189 (hereinafter, the "ADA") and the ADA's Accessibility Guidelines, 28

---

[1] The pleadings and motions filed in present some confusion regarding exact nature of Defendant's business: Defendant's Answer refers to the premises as a "restaurant" (Dkt. 7 ¶¶ 13, 14, 16, 19). However, Defendant's motion states that Defendant is "a warehouse retail furniture store known as 'Payless Furniture', located at 4009 West Hillsborough Avenue, in Tampa, Florida." (Dkt 8 ¶ 2). Defendant has filed an Answer and does not challenge the accuracy of Plaintiff's identification of the premises by way of its motion.

C.F.R. Part 36 (hereinafter, the "ADAAG"), based upon Defendant's failure to remove physical barriers to access in violation of Title III of the ADA. This Court has original jurisdiction over the parties and the action pursuant to 28 U.S.C. §§ 1331 and 1343, 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. §§ 12181- 12189.

## DISCUSSION

As an initial matter, this Court recognizes that the Case Management Report reflects the parties' respective and collective representations of intent to submit to the authority of the procedural and substantive rules of this Court. The Court agrees with Plaintiff's position that the parties have begun the process of negotiating and settling certain issues relating to this case. Nonetheless, the Court sees value in addressing certain issues each party raises in this action. The Court speaks to the issues raised only to the extent they relate to procedural considerations affecting actions seeking relief under 42 U.S.C. §§ 12181- 12189 in the Middle District of Florida.

### A.     The Public Policy and Legislative Intent underlying the ADA

The specific purpose of the ADA is to provide equal opportunities for individuals with disabilities. The statutory language and legislative history make it clear that the ADA was intended to have a broad, remedial purpose. Specifically, its "Findings and Purpose" show that Congress intended the ADA to impact the lives of more than 43,000,000 Americans to address "a serious and pervasive social problem" which "persists" for which they "often had no legal recourse" thereby making people with disabilities "severely disadvantaged." 42 U.S.C.
section 12101(a) (1)-(6) (2009).

Likewise, the ADA's purpose is set forth within the statute itself: to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and to invoke the sweep of congressional authority, including the power to enforce the [F]ourteenth [A]mendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities. 42 U.S.C. §§ 12101 (b) (1)-(4) (2009).

B. **ADA's Scope and Prohibited Acts and Remedies related to this case.**

The ADA is divided into three titles. Title I regulates employment activities; Title II regulates public services; and Title III regulates **private entities that meet the characteristics of a public accommodation** as specified in 42 U.S.C. § 12181(7) (2009). Thompson v. Sand Cliffs Owners Ass'n., 1998 WL 35177067, slip. op. at 1 n. 1 (N.D. Fla. March 30, 1998) (emphasis supplied). Plaintiff's Complaint centers on Defendant's failure to remove physical barriers to access in violation of Title III of the ADA ("Title III").

To be protected by the Title III ADA, an individual must have a disability; a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. §§ 12102(A). Persons with a history or record of this kind of impairment or who are perceived by others as having this kind of impairment are included in this definition. 42 U.S.C. §§ 12102(B)–(C) (2009). The ADA does not specifically name all of the impairments that are covered, but recent amendments emphasize that that the definition of "disability" should be broadly interpreted. See Pub. L No: 110-325, 122 Stat. 3553 (2008) (stating its primary purpose is "[t]o restore the intent and protections of

the Americans with Disabilities Act of 1990").[2] The Act made changes to the definition of the term "disability" by rejecting the narrow holdings in several Supreme Court decisions and portions of EEOC's ADA regulations. See Pub. L No: 110-325, 122 Stat. 3553 § 2(a)(3)–(4) (finding that "while Congress expected that the definition of disability under the ADA would be interpreted consistently with how courts had applied the definition of a handicapped individual under the Rehabilitation Act of 1973, that expectation has not been fulfilled" and that "holdings of the Supreme Court in *Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999)* and its companion cases have narrowed the broad scope of protection intended to be afforded by the ADA, thus eliminating protection for many individuals whom Congress intended to protect") (emphasis in original).

Only injunctive and declaratory relief is available to private litigants who bring suit under this title. Association for Disabled Americans, Inc. v. Concorde Gaming Corp., 158 F. Supp. 2d 1353, 1359 (S.D. Fla. 2001). Plaintiff's Complaint seeks injunctive a relief under Title III. (Dkt. 1). Title III expressly prohibits disability-based discrimination in public accommodations and services operated by private entities. See 42 U.S.C. § 12201(b) (2009). An aggrieved party may seek injunctive relief by way of a permanent or temporary injunction or a restraining order against a private entity operating or providing services of public accommodation for the private entity's violations of Title III. 42 U.S.C. § 2000a–3(a) (2009); 42 U.S.C. § 12188(a)(1)-(2) (2009). Remedies and procedures are expressly provided in 42 U.S.C. § 2000a-3 and 42 U.S.C. § 12188(a)(1)-(2).

The reach of Title III extends explicitly to (1) "discrimination" on the basis of (2) "disability" in (3) a "place of public accommodation." Association for Disabled Americans, Inc., 158 F. Supp. 2d at 1359 -1360. Commercial facilities are governed by Title III and appear to be

---

[2] On September 25, 2008, President George W. Bush signed the Americans with Disabilities Act Amendments Act of 2008 ("ADA Amendments Act" or "Act"). The Act became effective on January 1, 2009.

included in among the number of private entities intended to be held accountable to Title III. See 42 U.S.C. § 12181(2), (7) (2009); 28 C.F.R. § 36.104 (last revised January 2002) (explaining, "The term 'commercial facilities' is not intended to be defined by dictionary or common industry definitions…and includes "factories, **warehouses**, office buildings, and other buildings…") (emphasis supplied); and Thompson v. Sand Cliffs Owners Ass'n., 1998 WL 35177067, slip. op. at 1 (explaining, "Title III of the ADA also requires that…commercial facilities be readily accessible to, and useable by, individuals with disabilities.").

Plaintiff's Complaint alleges he is "disabled as defined by the ADA" and that he is "substantially limited in performing one or more major life activities, including but not limited to walking, standing, grabbing, grasping and pinching." (Dkt. 1 ¶ 2). The Plaintiff "uses a wheelchair for mobility purposes." Id. Defendant's premises, known as Kally K's, is located at 1600 Main Street, Dunedin, Florida. (Dkt. 1). The motion under this Court's present consideration does not dispute Plaintiff's status as a disabled person, his standing to bring suit under Title III. Likewise, Defendant does not challenge its status or the identity as the premises actually visited under Title III.

C. **Defendant's Motion to Stay Proceedings**

Defendant seeks a stay of all discovery, required filings, and other acts that are typically conducted in a disputed lawsuit and allow Defendant to (1) identify the barriers and impediments to the disabled; (2) develop a reasonable remediation plan; (3) inform the Court and Plaintiff of its plan and schedule of implementation; and (4) undertake such work as can be performed with the resources available.

1. **Authority to Stay Proceedings**

The inherent discretionary power of a federal district court to stay the proceedings in a civil case in order to manage its docket is well recognized. 150 A.L.R. Fed. 577 (originally published in 1998); see also Landis v. North American Co., 299 U.S. 248, 254, (1936) (acknowledging that the "[p]ower to stay proceedings is incidental to the power inherent in every court to control disposition of causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").

The Federal Rules of Civil Procedure and Local Rules of the United States District Court for the Middle District of Florida apply to this proceeding. The Federal Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Rule 1, Fed. R. Civ. P. (2008). The Middle District Court's Local Rules are "intended to supplement and complement the Federal Rules of Civil Procedure…and other controlling statutes and rules of Court." Local Rule 1.01 (b).

The Local Rules must be "applied, construed and enforced to avoid inconsistency with other governing statutes and rules of court, and shall be employed to provide *fairness and simplicity in procedure*, to *avoid technical and unjustified delay*, and to *secure just, expeditious and inexpensive determination of all proceedings*." Id. (Emphasis supplied).

Before any court may set aside its own rules, the court must assure itself that it is in the interests of justice to do so. 21 C.J.S. Courts § 185 (West 2008). A court must also ensure that the rule is not a mandatory rule and that substantive rights of the parties are not prejudiced by its decision to set aside its own rules. Id. A decision to set aside a rule should not be made lightly; therefore, relaxing or dispensing with a court rule is the exception, rather than the norm. Id. The request to set aside a court rule should be refused unless strong reasons are presented in support of the request. Id. (citations omitted).

(1)     *Authority under the Federal Rules of Civil Procedure*

Defendant's motion does not cite to the authority granted under the Federal Rules of Civil Procedure.  By presenting a written motion to the Court, the signer makes a representation to the Court that the "legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Rule 11(b), Fed. R. Civ. P. (2008). Defendant motion cites no law support of its motion.

Likewise, Defendant points to no applicable procedural rule under which a stay may be granted.  A stay of proceedings is governed by Rule 62, which contains certain mandatory and discretionary standards for granting a stay of proceedings. See Rule 62, Fed. R. Civ. P. Ann. (West 2008).  The discretionary provisions within Rule 62 are found in subparts (b), (c), (d) and (h). Fed. R. Civ. P. 62(b)(1)-(4) (pending disposition of certain motions); Fed. R. Civ. P. 62(c) (while an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction); Fed. R. Civ. P. 62(d) (providing that the appellant *may* obtain a stay on appeal by supersedeas bond); and Fed. R. Civ. P. 62(h) providing for a stay the enforcement of a final judgment in actions with multiple claims or parties).  Although, this Court finds that provisions for granting stays under Rule 62 are inapplicable to Defendant's motion, some authority for the suspension of rules exists under the Local Rules.

(2)     *Authority under the Local Rules*

Though Defendant's motion is similarly deficient in citing authority under the Middle District's Local Rules, this Court is nevertheless permitted to "suspend application and enforcement of these rules, in whole or in part, in the ***interests of justice in individual cases*** by written order." Local Rule 1.01 (c) (emphasis supplied).

2. **Application of Authority to Stay Proceedings to Defendant's Motion**

Defendant's motion states that the construction of its premises "predated the enactment of the ADA." (Dkt. 8 ¶2). Irrespective of this statement, Defendant's does not advance the argument that it is somehow exempt from or meets an exception to ADA's compliance requirements. Consequently, the fact that Defendant's building is a pre-ADA construction has no bearing on this Court's ruling. Defendant motion misstates that Defendant is "legitimately aggrieved party." (Dkt. 8 at 8). Based on this perceived status, Defendant seeks this Court's assistance in "contriving a process that allows Defendant to address the needed changes without having to deduct from those available resources the fees and costs of unnecessary litigation." Id. Defendant's position is not well-taken. Either Defendant misunderstands the mechanism of enforcement in Title III or asks this Court by its order to impose on Plaintiff a requirement that is not contained in the ADA. Specifically, Title III's remedies are available:

> *[T]o any person who is being subjected to discrimination on the basis of disability in violation of this subchapter or who has reasonable grounds for believing that such person is about to be subjected to discrimination* in violation of section 12183 of this title.

42 U.S.C. § 12188(1) (2009) (dual emphasis supplied).

Congress did not create an administrative process to ensure compliance with the ADA's public accommodation provisions. Rodriguez v. Investco, L.L.C., 305 F.Supp.2d 1278, 1281 (M.D. Fla. 2004) (footnote omitted). Instead, Congress created a private right of action and a right of action for the Attorney General, under §§ 12188(a) and (b), respectively. Id. Although the ADA's private remedies for violations by public accommodations are limited to injunctive relief under § 12188(a), the ADA contains an attorney's fee provision in § 12205. The attorney's fee

provision is sometimes seen as an incentive to private litigation. Rodriguez v. Investco, L.L.C., 305 F.Supp.2d at 1281. Although Congress did not provide a process to ensure compliance with the ADA, this is not to say that the Court is free to contrive one as Defendant suggests. Where a statute expressly provides a particular remedy or remedies, a court must be cautious of reading others into it. Shotz v. City of Plantation, 344 F.3d 1161, 1171 (Fla. 11th Cir. 2003) (footnote and citations omitted).

It does not escape this Court's attention that Defendant's motion admits both liability (Dkt. 8 ¶7) and "the legal requirement to make its place of public accommodation accessible to the disabled to the extent such is readily achievable." (Dkt. 8 at 4). A diligent search of the *Title III Technical Assistance Manual Covering Public Accommodations and Commercial Facilities* ("Technical Assistance Manual" or "Manual") may allow Defendant to address the needed changes without having to deduct from those available resources the fees and costs of unnecessary litigation. The Manual specifically recognizes public accommodations are required to remove barriers only when it is "readily achievable" to do so and sets priorities for barrier removal. Technical Assistance Manual at III-4.4200 (Readily achievable barrier removal) and Id. at III-4.4500 (Priorities for barrier removal). A public accommodation's **first priority** "should be to enable individuals with disabilities to physically enter its facility." Id. (emphasis supplied). The "obligation to engage in readily achievable barrier removal is a continuing one." Id. By Defendant's own admission, it has failed to accomplish its priorities and obligations under the ADA.

This Court also gave due consideration that the parties entered into a Case Management Plan submitted in compliance with the Federal Rules of Civil Procedure and the Middle District Court's Local Rules. The nineteen (19) years since the ADA's passage serve to underscore this Defendant's failure to assist Plaintiff, and others similarly situated, in "getting through the door." Title III's

enforcement provisions and remedies for violations are very plainly stated within the text in section 12188. Defendant's request for dispensing with the rules governing these proceedings is not grounded upon any legal authority stated in Title III or the Federal Rules of Procedure.

To determine whether a suspension of the rules governing this proceeding is warranted, Defendant's interests must be considered on balance with Plaintiff's interests. Defendant seeks to stay all proceedings for the purpose of identifying barriers and developing a remediation plan. Plaintiff seeks to move forward with litigation. The parties' competing interests must likewise be examined in light of their expressed intent in filing a Case Management Plan. Finally, in determining whether to suspend its rules and stay this proceeding, this Court must consider the Congressional intent of the ADA. It is this last consideration that the Court finds most enlightening: Congress has determined that individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age. 42 U.S.C. § 12101(a)(4) (2009).

Defendant's have done little to advance the Court's belief that it is in the interests of justice to suspend its rules in Title III cases. This is especially true given that Congress expressly intended Title III's public accommodation remedies to provide only for injunctive relief, which is a form of summary process necessary to meet Congress' stated intent. The recent amendments bolster the nation's renewed commitment to restore the intent and protections espoused in the Americans with Disabilities Act of 1990. In January 2009, the Legislature reaffirmed its commitment to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. The Legislature has again shored up fortifications to provide strong, consistent, enforceable standards addressing discrimination against individuals with disabilities. These

considerations necessarily warrant this Court's denial of Defendant's Motion to Suspend Local and General Rules Pending ADA Inspection and Remediation Plan.

D.      **The Court's Power to Prevent Abusive Filings and Multiplicity of Suits.**

The Court is not insensitive to the present economic market and its effects on private and business interests. The Court is also aware that the present action may have a financial impact on Defendant's financial resources. The ADA's compliance requirement did not occur in a vacuum and is not contemporaneous with Plaintiff's initiating this lawsuit. It is a nineteen-year old mandate with a clearly defined scope and effect. Defendant motion states that "most of these defendants have seen substantially diminished income, increased operating costs and that which was previously "readily achievable" is now less so, and taking longer to implement (assuming the business is profitable at all). Yet the lawsuits keep coming." Because Defendant raises no specific, personal prejudice to justify a stay under the Local Rules, these generalizations are largely to unavailing. Defendant's current station is wholly due to non-compliance with the statute.

Defendant characterizes Plaintiff, A. Joseph Raetano, as "a serial litigator of ADA Title III public accommodation cases." (Dkt. 8 ¶1). Defendant's motion also laments that Plaintiff "has filed 61 lawsuits in the Middle District in Tampa" and that Plaintiff "actively seeks out noncompliant businesses to sue, without the benefit of a warning or any notice." (Dkt. 8 at 1). Defendant overlooks that Title III's enforcement section does not require any warning or notice. 42 U.S.C. § 12188(1) (2009) ("***Nothing in this section shall require a person with a disability to engage in a futile gesture*** if such person has actual notice that a person or organization

covered by this subchapter does not intend to comply with its provisions.") (Dual emphasis supplied).[3]

Just as the Defendant's admission of liability and responsibility recognizes, there is good reason to believe the defendants were in fact violating Title III in a majority of cases brought by "serial litigators." Bagenstos, 54 UCLA L. Rev. at 5 (footnote citations omitted). The long and short of this conclusion is that businesses do not regularly comply with the ADA. Id. at 7 and n. 23. This is not to say that Defendant's lament is not without support. Washington University School of Law Professor Samuel R. Bagenstos writes, "the remedial limitations that were imposed to prevent litigation abuse have encouraged the very practices that courts and businesses find especially abusive." Id. at 30.

A District Court has the inherent power to levy sanctions in response to abusive litigation practices. See, e.g., Roadway Express, Inc. v. Piper, 447 U.S. 752, 756-66 (1980). This Court agrees with Defendant that the procedural and local rules are subject to exploitation and abuse in Title III cases in which the defendant admits liability and needs only to determine the scope and breadth of the remediation required. Despite the potential for this "abuse," Defendant's motion merely details its complaints of Plaintiff's and Plaintiff's counsel's practices as a whole, but provides no specific support abusive or vexatious litigation of the kind that empowers this Court to act.

---

[3] The ADA Notification Act has been introduced multiple times. Bagenstos, *supra*, at 17. The Notification Act's most recent manifestation sought to amend title III of the Americans with Disabilities Act of 1990 to require notice and an opportunity to correct alleged violations as a precondition to commencing a civil action with respect to a place of public accommodation or a commercial facility. H.R. 3479, *The ADA Notification Act of 2007* (Sep 5, 2007). The Bill never became law.

A vexatious suit is defined as a "lawsuit instituted maliciously and without good cause." *Black's Law Dictionary* at 1596 (Bryan A. Gardner, ed., 8th ed., West 2004). The federal judiciary is not powerless against plaintiffs and attorneys who bring abusive or vexatious litigation. See e.g. Fed. R. Civ. P. 1 ("[rules are] to be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding") and Fed. R. Civ. Pro. 11(c)(1) ("If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."). Federal courts also have the discretion and authority to impose sanctions on litigants who bring abusive litigation or on attorneys who engage in the unethical practice of law, regardless of the law under which suit is brought. See 28 U.S.C. § 1927 (court may hold any attorney or person who "multiplies the proceedings in any case unreasonably and vexatiously" personally liable for additional costs, expenses, and attorney's fees incurred as a result). Litigiousness alone will not support an injunction restricting a plaintiff's filing activities under the ADA. See generally Samuel R. Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1, 4 (2006).

Though this Court is mindful that Plaintiff's filing a multitude of cases may only be reflective of the limitations on remedies under the statute's public accommodations title, some authority exists to support requiring a Plaintiff, a law firm, or both, to seek leave of court before filing additional ADA claims. At least one case suggests that a court may impose these pre-filing requirements where warranted by ethical violations, attorney or plaintiff malfeasance, or the filing of non-meritorious claim. Molski v. Mandarin Touch Restaurant, 359 F. Supp. 2d 924

(C.D. Cal. 2005), affirmed 500 F.3d 1047, reh'g and reh'g en banc denied 521 F.3d 1215, cert. denied 129 S. Ct. 594 (requiring a law firm to seek leave of court before filing additional ADA claims based on law firm's history of filing serial Americans with Disabilities Act (ADA) suits, in which it had given unethical advice, made questionable allegations of physical injury, pursued excessive compensatory damages, and secured quick settlements).

In Mandarin, the California District Court suggested that pre-filing requirements are supported by a district court's power and obligation to protect the administration of justice and the public from vexatious litigation. 359 F. Supp. 2d at 929 (citations omitted). In weighing its obligation to protect the public, the Mandarin Court took several factors into account to determine whether was necessary to exercise its inherent power to protect the public and the courts including: (1) the litigation history of Plaintiff's firm; (2) the firm's history of giving unethical advice; (2) the making questionable allegations of physical injury; (3) pursuing excessive compensatory damages; and (4) securing quick settlements. Id. After careful consideration of those factors, the District Court concluded that an exercise of its inherent power was appropriate.

Defendant's present motion does not provide this Court with sufficient information to conclude that an exercise of its inherent power to impose pre-filing requirements is appropriate.

The Court can recommend that Plaintiff and Plaintiff's counsel avoid the impropriety arising from imprudent action, including filing abusive or vexatious lawsuits. The Court further warns that a failure to proceed in good faith regarding Title III claims may result in the imposition of sanctions permitted under the Rules and applicable law. Accordingly, it is

**ORDERED** that Defendant's Motion to Suspend Local and General Rules Pending ADA Inspection and Remediation Plan (Dkt. 8) be **DENIED.**

**DONE AND ORDERED** in Chambers at Tampa, Florida on March 12th, 2009.



Copies to: All parties and counsel of record.